UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRENDA DUDICS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of the ) <br> Social Security Administration, ) <br> ) <br> Defendant. ) | Case No. C10-5501-TSZ-BAT <br><br> **REPORT AND RECOMMENDATION** |

Brenda Dudics seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications.  She contends the ALJ erred by (1) failing to find her headaches to be a severe impairment at step-two; (2) failing to properly consider the opinions of the examining and treating doctors; (3) failing to properly consider the opinions of ARNP Aimee Wagonblast; (4) discounting the testimony of Ms. Dudics; and (5) presenting an improper hypothetical to the vocational expert.  Tr. 16 at 19-20.  As discussed below the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**I. FACTUAL AND PROCEDURAL HISTORY**

Ms. Dudics is currently 49 years old, has a high school degree, and has worked as a cashier. On December 14, 2006, she applied for benefits alleging disability as of March 15, 2004.[1]  Her

---

[1] Ms. Dudics later amended the onset date to June 1, 2005. Tr. 28-29, 118.

REPORT AND RECOMMENDATION- 1

application was denied initially and on reconsideration.[2]  The ALJ conducted a hearing on April 21, 2009, and issued a decision on June 26, 2009 finding Ms. Dudics not disabled.  Tr. 7.  As the Appeals Council denied Ms. Dudics' request for review, the ALJ's decision is the commissioner's final decision.  Tr. 1.

## II.  THE ALJ'S DECISION

Utilizing the five-step sequential evaluation process,[3] the ALJ made the following findings:

**Step one:**  Ms. Dudics has not worked since the alleged onset date.  Tr. 12.

**Step two:**  Ms. Dudics' severe impairments are: neck and back pain, left shoulder pain, dysthymia, major depressive disorder, and post-traumatic stress disorder.  *Id*.

**Step three:**  These impairments do not meet the requirements of a listed impairment.[4]

**Residual Functional Capacity:**  Ms. Dudics can perform light work with restrictions: occasional climbing, stooping, kneeling, crouching, and crawling.  She can lift up to 15 pounds occasionally with her left non-dominant arm, and up to 20 pounds occasionally with her right dominant arm.  Her mental impairments limit her to unskilled work with only occasional interaction with co-workers and the general public.  Tr. 16.

**Step four:**  Ms. Dudics cannot perform her past work.  Tr. 20.

**Step five:**  As there are jobs Ms. Dudics can perform, she is not disabled.  Tr. 20, 21.

## III.  DISCUSSION

**A.  The ALJ's Step-Two Analysis**

Ms. Dudics argues, and the Court agrees, the ALJ erred at step-two[5] in failing to find her headaches are a severe impairment.  At step two, Ms. Dudics must show two things.  First, that she has a medically determinable impairment.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

---

[2] Tr. 75, 80, 83, 89.
[3] 20 C.F.R. §§.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[5] Ms. Dudic's opening brief indicates this issue is brought under *Webb v. Barnhart*, 433 F.3d 683 (9th Cir. 2005), a case addressing whether the ALJ erred at step-two.

REPORT AND RECOMMENDATION- 2

The ALJ found Ms. Dudics suffers from headaches.  The commissioner argues the ALJ rejected the headaches on the grounds there was no "objective basis" for them.  Dkt.  20 at 9; Tr. 15.  However, as the ALJ did not reject Ms. Dudics' headaches on the grounds they are not medically determinable, the commissioner's argument is an improper post-hoc rationalization that this Court cannot rely on.  *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

Second, Ms. Dudics must show the impairment is severe.  *Bowen*, at 147.  An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c), 404.1521(a).  An impairment is "not severe" if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

While a claimant has the burden to prove a severe impairment at step-two, the ALJ still has a duty to explain or make factual findings to support her conclusion.  Here, the ALJ made no such findings and instead rejected Ms. Dudics' headaches stating there is no connection between her headaches and work-related limitations.  Tr. 15.  This conclusory statement essentially restates the definition of "not severe" and is not an adequate ground.  Accordingly, the Court concludes the ALJ erred in finding Ms. Dudics' headaches are not a severe impairment.

The Court also concludes this error is not harmless.  There is medical evidence that Ms. Dudic's suffers from chronic headaches.  The headaches were noted by Dr. Neim, Dr. Krueger, and Dr. Dr. Kooiker.[6]  Dr. Kooiker opined Ms. Dudics' chronic headaches might be caused by her cervical problems and recommended further testing.  He also opined that they cannot be segregated from her back pain, which the ALJ found to be a severe impairment.  The ALJ wholly rejected Ms. Dudic's headaches and did not discuss their impact in assessing Ms. Dudics'

---

[6] Tr. 650, 250, 436.

REPORT AND RECOMMENDATION- 3

functional capacity.  Under these circumstances, the Court concludes the ALJ's failure to consider the headaches and the combined effect it has with other impairments on Ms. Dudics' ability to function is not harmless.

**B.	Assessment of Medical Evidence**

*1.  Dan Neims, Psy.D.*

Ms. Dudics argues the ALJ erred in failing to give great weight to Dr. Neim's opinions. Dr. Neims opined Ms. Dudics' mental and pain problems rendered her unable to cope with the pressures of the workplace, made her socially inflexible and that she cannot perform sustained gainful employment.  Tr. 661-62.  The ALJ rejected the opinion stating:

> Great weight was not given to either opinion.  Both stand alone among numerous other opinions concerning the degree of limitation found in the claimant.  In an interpretation of these opinions most favorable to the claimant, they are a "snapshot" of the claimant's condition rather than a long history of specific limitations.

Tr. 19.  The commissioner argues the ALJ accepted part of Dr. Neim's opinion and incorporated it into her decision.  A review of the decision does not support this argument—the ALJ never stated she accepted any part of Dr. Neim's opinions.  As such, the Court cannot accept the argument as a basis to uphold the ALJ's treatment of Dr. Neim's opinions.

The commissioner also argues the Court should uphold the ALJ's decision because Dr. Neim's opinion is contrary to, or not supported by, other medical evidence.  Tr. 20 at 7-8.  While this argument is consistent with the ALJ's statement that Dr. Neim's opinion stands alone, the record does not support the argument.  Dr. Neims diagnosed Ms. Dudics with dysthymia, major depressive disorder, post-traumatic stress disorder and "psychological factors affecting physical condition if not better explained by probable pain disorder."  This diagnosis is consistent with the ALJ's findings of Ms. Dudic's severe impairments.

REPORT AND RECOMMENDATION- 4

Next, Dr. Neim's opinion about the severity and degree of impairment caused by these impairments is consistent with the opinions of other doctors. Dr. Wheeler opined Ms. Dudic's depressed mood, social withdrawal and global illness was "marked" and that she had marked limitations in her ability to relate appropriately with co-workers and supervisors, and to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 237-38. Dr. Wheeler opined the "combination of depr. And stress of pain would qualify her for GAU." Tr. 239. Dr. Krueger opined Ms. Duducs had "marked" physical complaints, and that she had marked limitations in her ability to learn new tasks; respond appropriately to and tolerate the pressures and expectations of a normal work setting; and interact appropriately in public contacts. Tr. 251-52. Dr. Burke and ARNP Wagonblast assessed Ms. Dudics with GAF scores of 47 and 40-45, respectively (Serious symptoms or a serious impairment in social, occupational, or school functioning.). Tr. 274. Hence, the record establishes that Dr. Neim's opinion about the degree of Mr. Dudics' impairment is consistent with the other medical evidence, and does not "stand alone" and is not merely a "snap shot" of her limitations as the ALJ found.

And finally, the commissioner argues the ALJ properly rejected Dr. Neim's opinions based on other medical evidence about Ms. Dudics' cognitive function and Ms. Dudics' activities. The ALJ, however, did not indicate she relied on these grounds in rejecting Dr. Neim's opinions. Thus the Court commissioner's argument is an improper post-hoc rationalization that this Court cannot rely on.

**2. Dr. Kimberly Wheeler Ph.D., Dr. Jon Burke, Ph.D. and Dr. Keith Krueger, Ph.D.**

Ms. Dudics argues, and the Court agrees, that the ALJ erred in rejecting the opinions of examining doctors Wheeler and Krueger. As noted above, Dr. Wheeler and Dr. Krueger opined Ms. Dudics' depressed mood, social withdrawal, physical complaints and global illness were

REPORT AND RECOMMENDATION- 5

"marked," and that she had marked limitations in her ability to relate appropriately with co-workers and supervisors; respond to and tolerate the pressures and expectations of a normal work setting; learn new tasks; and interact appropriately in public contacts.

Where not contradicted by another physician, an examining physician's opinion may be rejected only for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996. Where contradicted, an examining physician's opinion may be rejected if the ALJ gives "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* The ALJ made no mention of findings the doctors made above and gave no reasons to reject them. Tr. 14, 18. Accordingly, the Court concludes the ALJ erred.

Dr. Burke is a treating doctor. He assessed Ms. Dudics with GAF scores of "past year: 47; present: 47." Tr. 562. These scores indicate Ms. Dudics has serious symptoms or a serious impairment in social, occupational, or school functioning.[7] GAF scores are relevant and should be considered. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ can discount GAF scores where the ALJ gives specific, legitimate reasons such as findings of other physicians that contradict the scores. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, the ALJ did not mention the GAF scores and gave no reason to reject them. Accordingly, the Court concludes the ALJ erred.

### 3. Aimee Wagonblast, ARNP

ARNP Wagonblast provided Ms. Dudics mental health treatment. The commissioner acknowledges the ALJ erroneously failed to discuss the GAF score of 40-45 which ARNP Wagonblast assessed Ms. Dudics, but argues this failure is harmless. The Court cannot agree

---

[7] *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, XX (4th ed. 1994) ("DSM IV") at 34.

REPORT AND RECOMMENDATION- 6

given the ALJ's failure to address the opinions of Drs. Wheeler, Burke, and Krueger, and the ALJ's erroneous rejection of Dr. Neim's opinion all of which are consistent with the GAF score ARNP Wagonblast assessed in this case.

### 4.  Dr. Shirley Deems, M.D.

Dr. Deems opined that Ms. Dudics was limited to lifting and carrying 10 pounds in contrast to the ALJ's finding that Ms. Dudics could lift 20 pounds occasionally.  Tr. 383.  The ALJ took into account Dr. Deem's opinion in asking the vocational expert whether there were any sedentary jobs (lifting no more than 10 pounds) that Ms. Dudics could perform.  The Court thus finds any alleged error in assessing Dr. Deem's opinion is harmless.

**C.    Ms. Dudics' Credibility**

Ms. Dudics argues the ALJ improperly discounted her testimony.  Ms. Dudics testified she suffers from pain and depression everyday; that she can walk only 1½ blocks, stand or sit for 15 minutes and lift up to 20 pounds; that she has trouble dealing with people and crowds, and has panic attacks when she's in public.[8]  The ALJ found no evidence of malingering, and thus may reject Ms. Dudics' testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so.  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

The ALJ rejected Ms. Dudics' testimony on the grounds the objective medical evidence did not support the degree of impairment Ms. Dudics claimed.  In support, the ALJ first pointed to Dr. Wheeler's opinions.  The ALJ focused on the portions of Dr. Wheeler's opinions pertaining to Ms. Dudic's cognitive functioning and memory.  But these opinions do not relate directly to Ms. Dudics' testimony about her physical, pain and mental health problems.

---

[8] Tr. 33, 41-42, 36.

REPORT AND RECOMMENDATION- 7

1  Moreover, the ALJ disregarded the portions of Dr. Wheeler's opinions supporting Ms. Dudics'

2  testimony: that Ms. Dudics has "marked" depressed mood, social withdrawal and global illness;

3  and marked limitations in her ability to relate appropriately with co-workers and supervisors, and

4  tolerate the pressures and expectations of a normal work setting.  Tr. 238.   The Court concludes

5  Dr. Wheeler's opinions do not provide a basis to discount Ms. Dudics' testimony.

6          Second, the ALJ noted Dr. Thomas Prieskorn found Ms. Dudics had full neck motion, 5

7  out of 5 upper extremity strength and intact motor and sensory strength.  Tr. 18 (citing Tr. 564).

8  Although Dr. Prieskorn opined Ms. Dudics has normal upper extremity strength, he did not

9  indicate how long she can sit, stand or walk.  Hence his opinion does not contravene Ms. Dudic's

10 testimony about sitting and standing, or about her mental health problems.

11         Third, the ALJ discounted Ms. Dudics' testimony on the grounds she lacked "a

12 commitment to the regimen advised by her mental health professionals."  Tr. 18.  Unexplained

13 failure to seek treatment is a clear and convincing reason to question a claimant's credibility.

14 *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Here, based on ARNP Wagonblasts'

15 records, the ALJ found Ms. Dudics looked to medications to fix her problems and "was not

16 making positive changes in dealing with her depressive symptoms," was not journaling because

17 she didn't feel like it, and was inconsistent with therapy appointments.  Tr. 18.  But the portions

18 of the records upon which the ALJ relies do not establish Ms. Dudics failed to seek or lacked a

19 commitment to treatment.  Rather, ARNP Wagonblast stated "Brenda seems to have an external

20 locus of control in that she is looking toward medications to "fix" all of her problems.  She does

21 not seem very proactive in her approach with me in terms of making any positive changes in

22 dealing with her depressive symptoms.  She continues to access therapy through Diane Young.

23 Hopefully, she will make some progress in this area."  Tr. 535.

REPORT AND RECOMMENDATION- 8

1    While these comments reveal Ms. Dudics was struggling in treatment, they do not
2 indicate she was refusing or failing to seek treatment.  Rather, they indicate Ms. Dudics was
3 exploring more treatment with another mental health counselor rather than giving up on
4 treatment.
5    In regard to the ALJ's finding that Ms. Dudics was not journaling, ARNP Wagonblast's
6 records contain a progress note stating "Ct. did not journal because 'I did not feel like it' Has
7 sinus infection.  Agrees to start J. when feeling well.  Ct. lost #15.  Continues exercise/eating
8 plan."  Tr. 533.  The progress note also states under a section entitled client involvement:
9 "making progress."  *Id.*  This one reference that Ms. Dudics did not journal thus appears to be
10 tied to being sick, not a refusal to follow through treatment.
11    Fourth, the ALJ rejected Ms. Dudics' testimony finding she rejected the possibility of
12 work and depends on getting disability.  Tr. 18.  Ms. Dudics' records note "the library where she
13 volunteers wants her to apply for a job next year but she thinks she can't work because of the
14 pain, she's scared she won't get SSI and will HAVE to work in pain – lots of terriblizing today."
15 Tr. 519.  The doctor writing this note did not indicate Ms. Dudics could work or was
16 exaggerating her mental problems in an attempt to gain undeserved benefits.  Rather the doctor
17 noted that when Ms. Dudics made the statement about not being able to work, she came in upset,
18 believed life was horrible, that nothing was right with the world and that she lacked any
19 objective perspective.  *Id.*  The comment noted it was not until the end of the session that it
20 "seemed she was more able to think rationally."  *Id.*  Under these circumstances, this one-time
21 statement made during a session in which Ms. Dudics was not thinking rationally is not clear and
22 convincing evidence to reject Ms. Dudics' testimony.
23 /

REPORT AND RECOMMENDATION- 9

D.     **Step-five Hypothetical Questions to Vocational Expert**

Because the ALJ erred at step-two and in assessing the medical evidence and Ms. Dudics' credibility, the Court need not address this issue.

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends the Commissioner's decision be **REVERSED** and this case be **REMANDED** for further administrative proceedings.  On remand, the ALJ should:  (1) further develop the medical evidence, as necessary; (2) reevaluate the medical opinions in the record, (3) reassess step two of the evaluation process; (4) reevaluate Ms. Dudics' residual functional capacity; and (5) reassess steps four and five of the sequential evaluation process with the assistance of a vocational expert if deemed appropriate.  A proposed order accompanies this Report and Recommendation

DATED this 16th day of February, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION- 10